IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
December 7, 2017 Session

## GREG HEARN v. AMERICAN WASH CO., INC., ET AL.

**Appeal from the Circuit Court for Davidson County**
**No. 16C-1518          Kelvin D. Jones, Judge**

——————————————————————

**No. M2017-00722-COA-R3-CV**

——————————————————————

This is an appeal by the prevailing party of an award of damages in a breach of contract action arising out of a commercial lease agreement. Upon our review, we find no reversible error and accordingly affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which ANDY D. BENNETT and W. NEAL MCBRAYER, JJ., joined.

James Bryan Lewis, Nashville, Tennessee, for the appellant, Greg Hearn.

Robert R. Laser, III, Nashville, Tennessee, for the appellees, the American Wash Company, Inc., Angela McClain, and Ed McClain.

**OPINION**

## I.     FACTUAL AND PROCEDURAL HISTORY

By a lease agreement executed on October 9, 2009, Greg Hearn rented property located at 55 Willow Street in Nashville to American Wash Company, Greg McClain, and Angela McClain for a term of 84 months. On September 18, 2015, prior to the expiration of the lease, Greg Hearn ("Mr. Hearn" or "Lessor") filed an unlawful detainer warrant in Davidson County General Sessions Court against American Wash Company, Inc., and Ed McClain and Angela McClain, individually (collectively, "Defendants" or "Lessees"). The warrant alleged that Mr. Hearn sought "possession only" of the 55 Willow Street property and "reserves [his] rights to pursue any monetary and or physical damages in a separate suit of action." Judgment was entered on October 5, granting possession of the premises to Mr. Hearn. The judgment portion of the warrant states that

"monetary damages [are] reserved."  A Writ of Restitution, issued October 16 and executed on October 28 gave Mr. Hearn possession of the property.

By order entered January 19, 2016, the general sessions court reopened the case and issued an amended detainer warrant.  In the amended warrant, Mr. Hearn sought $26,050 for "damages to the premises" and attorney's fees.  On May 26, the Defendants moved to remove the action to circuit court, and on June 1 an agreed order was entered transferring the case.

Mr. Hearn filed an unsworn Amended Complaint in the circuit court, asserting causes of action for breach of contract for failing to make repairs and failing to pay rent as to all defendants and against Ed and Angela McClain, as guarantors; the amended complaint sought a judgment in the amount of $33,419 for unpaid rent, $11,720 for late charges, $111,852.83 for damages to the premises resulting from the Defendants' failure to make the repairs on the punch list, as well as interest, attorney's fees, and costs. A copy of the lease agreement and photographs depicting the property in a state of disrepair were attached as exhibits.

The three defendants filed answers on August 24.  Each answer denied the allegations of the amended complaint and pled the defense of failure to state a claim, as well as the affirmative defenses of comparative fault, unconscionability, primary assumption of the risk, laches, failure to mitigate damages, unclean hands, estoppel, accord and satisfaction, and impossibility.

In December, Mr. Hearn filed two motions for the court to impose sanctions on the Defendants and hold them in contempt for failing to answer interrogatories and requests for production of documents, failing to pay $1,200 as sanctions "pursuant to the Order of November 21, 2016,"[1] and failing to attend a case management conference. Mr. Hearn requested the court strike the Defendants' answers and enter a default judgment for their "failure to participate in discovery and the case management conference." The court held a hearing on December 16 and entered an order striking Defendants' answers and entering a default judgment as sanctions for their "failure to comply with the Court's orders concerning discovery and case management and [their] failure to appear and defend the case."  The court also ordered that a show cause hearing be held on January 9, 2017, for the Defendants to show why they should not be held in contempt for their failure to comply with the court's previous orders.  It is not clear from the record whether the show cause hearing was held, and the court did not enter any orders pertaining to the Defendants' alleged contempt.

After a hearing on damages on January 9, at which defendant Ed McClain appeared *pro se*, the court entered an order on January 13 awarding a judgment to Mr.

---

[1] The record on appeal does not contain the November 21, 2016 order.

Hearn in the amount of $8,070 against Defendants, jointly and severally, for unpaid back rents and late fees. The court held that Mr. Hearn failed to establish his entitlement to damages for various punch list items because he did not establish that he provided bids for the cost of repairs to the Defendants during the term of the lease. The court later entered an order awarding Mr. Hearn's attorney fees, in the amount of $5,000.

Mr. Hearn moved to alter or amend the January 13 order, asserting that the court "erred in failing to award Plaintiff damages to his property in the amount of $111,852.83, unpaid rents in the amount of $33,410.00, and late charges in the amount of $11,720.00." Mr. Hearn also moved to alter or amend the order granting attorney fees, arguing that he "is entitled by law to a judgment of $156,982.83" and "would request his original attorney's fee of $31,554.93, or an attorney's fee of $52,327.61, which represents one-third (1/3) of the judgment Plaintiff should have been awarded." By order entered March 27, the court denied both motions. Mr. Hearn appeals, raising the following issues for our review:

1. Whether the Trial Court erred in failing to award damages when it did not accept the well-pled allegations set forth in the Appellant's Amended Complaint as true, after the Trial Court had granted default judgment in favor of the Appellant.
2. Whether the Trial Court erred in its interpretation of the Lease Agreement.
3. Whether the Trial Court erred in finding that Appellant was required to provide bids for the punch list items as a condition precedent.
4. Whether the Trial Court's determination of damages for unpaid rent and late fees is supported by the evidence.

## II. ANALYSIS

The lease agreement at issue in this case is a contract, and the interpretation of a contract is a question of law. *Guiliano v. Cleo, Inc.* 995 S.W.2d 88, 95 (Tenn. 1999). Accordingly, we review the contract *de novo* and reach our own independent conclusions regarding the meaning and legal import of its terms. *Guiliano,* 995 S.W.2d at 95; *Hillsboro Plaza Enterprises v. Moon,* 860 S.W.2d 45, 47 (Tenn. Ct. App. 1993).

"The proper measure of damages is a question of law, but the actual calculation of damages is a question of fact." *Tennison Bros., Inc. v. Thomas*, No. W2016-00795-COA-R3-CV, 2017 WL 6403888, at *16 (Tenn. Ct. App. Dec. 15, 2017), *appeal denied* (Apr. 23, 2018) (citing *Hanson v. J.C. Hobbs Co.*, No. W2011-02523-COA-R3-CV, 2012 WL 5873582, at *13 (Tenn. Ct. App. Nov. 21, 2012); *Poole v. Union Planters Bank, N.A.*, 337 S.W.3d 771, 789 (Tenn. Ct. App. 2010)). Accordingly, we review the court's factual findings *de novo* upon the record with a presumption as to their correctness, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d).

Mr. Hearn has failed to include a transcript or statement of evidence from the January 9, 2017 hearing on damages. There is a transcript of a hearing on Mr. Hearn's motion to alter or amend that contains only the arguments of counsel. The only evidence in the record are the 13 exhibits introduced at the evidentiary hearing.[2] Rule 24(b) of the Tennessee Rules of Appellate Procedure states that it is the duty of the appellant to prepare "a transcript of such part of the evidence or proceedings as is necessary to convey a fair, accurate and complete account of what transpired with respect to those issues that are the bases of appeal." Rule 24(c) allows that where a transcript is not available, "the appellant shall prepare a statement of the evidence" which "should convey a fair, accurate and complete account of what transpired with respect to those issues that are the bases of appeal." Where there is no transcript or statement of the evidence, "there is a conclusive presumption that there was sufficient evidence before the trial court to support its judgment, and this Court must therefore affirm the judgment." *Coakley v. Daniels*, 840 S.W.2d 367, 370 (Tenn. Ct. App. 1992) (citing *McKinney v. Educator and Executive Insurers, Inc.*, 569 S.W.2d 829, 832 (Tenn. Ct. App. 1977)). In this case, in addition to the conclusive presumption that the testimony supports the trial court's judgment, we also consider the thirteen exhibits present in the appellate record.

Mr. Hearn first argues that, due to the entry of a default judgment, he is entitled to the amount of damages alleged in his complaint. Therefore, he contends that the trial court erred in considering facts outside the complaint in its consideration of the amount of damages to be awarded. This argument is without merit. "This Court has recognized that 'the mere entry of a default judgment in favor of a party does not, *ipso facto*, entitle that party to carte blanche damages. Rather, a trial court may only award those damages to which the party is legally entitled.'" *Tennison Bros.,* 2017 WL 6403888, at *12 (Tenn. Ct. App. Dec. 15, 2017) (quoting *Ace Design Grp., Inc. v. Greater Christ Temple Church, Inc.*, No. M2016-00089-COA-R3-CV, 2016 WL 7166408, at *6 (Tenn. Ct. App. Dec. 8, 2016) (*no perm. app. filed*)). In light of the applicable law and the lack of a sworn complaint, the court did not err in hearing proof to determine the amount of damages to which Mr. Hearn was legally entitled.

We combine the second and third issues raised, which challenge the court's interpretation of the lease agreement. Specifically, Mr. Hearn argues that the court erred in finding that he was required to submit bids for repair work as a condition precedent to the Defendants' responsibility to pay for the work. He also argues that the Lessees "were the first to materially breach the Lease Agreement by failing to pay rent," rendering any subsequent breach of his (i.e., his failure to submit bids for repair work) moot.

The court held that "Plaintiff failed to establish damages for the punch list items because plaintiff did not establish that he satisfied the condition precedent of providing

---

[2] The exhibits were certified by the trial court clerk and made part of the record on appeal. In their briefs, the parties do not raise any issue with respect to the admissibility of these exhibits.

bids to the defendants during the eighty-four month term." This holding was based on the following factual findings:

> The Court further finds that the plaintiff did not provide copies of the punch list items bids to defendants before the expiration of eighty four (84) months lease term as required by paragraph 11. Providing copies of the bids to the defendants was a material term of the agreement and a condition precedent in order for the defendants to pay the bids within the eighty-four month period. The Court explicitly asked Mr. Hearn did he provide the bids to defendants. Mr. Hearn testified that he just gathered the bids and submitted them to his attorney. The bids were not attached to the amended complaint and there was no sworn testimony presented establishing that the bids were provided to the defendants before the expiration of the eighty-four months term. The Court notes that the bids were all obtained between October 28, 2015 and December 30, 2015. The property was sold in January 2016.

Excluding the second sentence in the above paragraph, which is a conclusion of law, the record, including the trial exhibits, supports the trial court's factual findings. As noted, the trial court concluded that the Lessor was required to submit bids as a condition precedent to the Lessees' obligation to pay; Mr. Hearn contests this holding.

A condition precedent is "[a]n event, not certain to occur, which must occur, unless its non-occurrence is excused, before performance under a contract becomes due." *Covington v. Robinson*, 723 S.W.2d 643, 645 (Tenn. Ct. App. 1986) *(*quoting *Restatement 2nd, Contracts,* § 224). "Whether a contractual provision is or is not a condition precedent depends upon the parties' intention which should be gathered from the language they employ." *Harlan v. Hardaway,* 796 S.W.2d 953, 957 (Tenn. Ct. App. 1990) (citing *Buchanan v. Johnson,* 595 S.W.2d 827, 830 (Tenn. Ct. App. 1979)). Conditions precedent are not favored, and doubtful language will be construed "as imposing a duty rather than creating a condition precedent." *Harlan*, 796 S.W.2d at 957 (citing *Buchanan,* 595 S.W.2d at 831; Restatement (Second) of Contracts § 227(3) (1979); 3A A. Corbin, *Corbin on Contracts* § 635 (1960)).[3] "The non-performance of a

---

[3] In *Buchanan*, relied upon by this Court in *Harlan*, we also observed:

> [T]he difference [between whether a contractual provision contains a condition or a covenant] relates largely to the remedy, and if the breach of the agreement pertains to the validity of the instrument or is a ground for forfeiture it is a condition, while if the remedy for a breach is an action at law for damages the agreement is a covenant. 17A C.J.S. Contracts [§] 337, citing: *U. S. v. Haynes School Dist. No. 8, D.C.*, 102 F.Supp. 843; *Cavanagh v. Iowa Beer Co.*, 136 Iowa 236, 113 N.W. 856.

595 S.W.2d at 831.

condition precedent is an affirmative defense that must be pled." *Harlan,* 796 S.W.2d at 957 (citing Tenn. R. Civ. P. 9.03).

None of the Defendants pled this affirmative defense in their answers; the term first appears in the order that is under review. Under applicable law, we disagree that the lease contained a condition precedent obligating Mr. Hearn to submit bids to the Defendants before they were obligated to pay for the repairs, rather than a covenant; for the following reasons, however, we agree with the trial court's ultimate holding that Mr. Hearn did not establish that he was entitled to damages for the items on the punch list.[4]

The pertinent provisions of the lease read:

11. <u>Lessees' responsibilities</u>. Lessees' are responsible for building as received in addition the following shall be repaired at Lessees' expense. The repairs need to be completed by end of eighty-four (84) month lease. Lessor will provide bids to Lessee and Lessees' will pay for repairs to Lessor the dollar amount of the total on the bids from the following punch list:

[List of 21 items/repairs omitted.]

\*\*\*

14. <u>Lessor's responsibilities</u>. By any reason of such casualty, after agreement on list of repairs by Lessees', the Premises are leased as is. The list of repairs must be completed by end of eighty-four (84) month lease or Lessee agrees to pay Lessor for repairs on estimates provided by Lessor at the time the estimates are provided to Lessee. The building (55 Willow Street) is leased as is.

While the lease is not a model of clarity, Paragraphs 11 and 14, construed together, required the Defendants to be responsible for certain repairs, to be completed before the lease expired, or to pay for the repairs when Mr. Hearn submitted bids or estimates to them. Mr. Hearn initiated this action prior to the expiration of the lease, as a result of which he was restored to the possession of the property. The findings relating to Mr. Hearn's failure to provide copies of the bids to the Lessees prior to filing suit are conclusively presumed to be supported by sufficient evidence. In addition, the exhibits also show that Mr. Hearn did not obtain bids for repairs until after possession of the

---

[4] "[I]f the Trial Judge reached the right result for the wrong reason, there is no reversible error." *Bush v. Commerce Union Bank*, 523 S.W.3d 56, 61 (Tenn. Ct. App. 2017), *perm. app. denied* (May 18, 2017) (quoting *Robinson v. Currey*, 153 S.W.3d 32, 40 (Tenn. Ct. App. 2004)).

property was restored to him. Because the Lessees could not have received the bids prior to being removed from the property and had no way to complete the repairs when they were dispossessed of the property, we affirm the trial court's holding that Mr. Hearn was not entitled to damages for the punch list items that were not repaired.[5]

Mr. Hearn also asserts that the Defendants breached the lease first by failing to pay rent in an effort to render his own breach — failing to submit the bids to the Defendants within the term of the lease — moot. Related to this argument, we also consider the fourth issue Mr. Hearn raises, that the court erred in its determination of damages for unpaid rent and late fees. Pertinent to these issues is the following portion of the court's order:

> During the trial of this matter, the plaintiff, Greg Hearn, testified that on or about January 2016, he sold the property at a loss of $175,000 because of the unrepaired punch list items identified in paragraph 11 of the Lease.[6]

> To rebut this claim, Mr. McClain testified that the plaintiff evicted him in bad faith in order to be able to sell the property and make the defendants responsible for any losses attenuated [sic] with the sale. Mr. McClain presented a witness, Shaquille Carter, who testified that he heard Mr. Hearn mention in or about June 2015 that he intended to sell the property. Mr. Carter further testified that he heard Mr. Hearn ask Mr. McClain how much notice Mr. McClain would need in order to vacate the property. The plaintiff did not contest or rebut Mr. Carter's trial testimony. Therefore, the Court finds Mr. Carter's testimony to be credible.

> Mr. McClain contends that the detainer warrant action was simply a ruse to get him out of the property. To support his position, Mr. McClain established through the plaintiffs' bank records that since the inception of the Lease, the defendants customarily, and through a course of dealings, paid the rent approximately 10 to 15 days after the due date. In fact, the plaintiff's bank statements that were presented at trial by the plaintiff supported Mr. McClain's position and established the defendants' paid the rent late every month and had missed rental payments as follows:

---

[5] For the same reasons, Mr. Hearn's contention that Defendants breached the lease by failing to make repairs is without merit.

[6] While the lease contains a "punch list" identifying 21 items to be repaired over the term of the lease, there is no "punch list" present in the record identifying which items were still outstanding as of the time possession was restored to Mr. Hearn. Photographs of what was alleged to be damage to the premises were attached to the unsworn complaint, and the trial exhibits consist of the photographs, 10 repair quotes, and one receipt for the replacement of two deadbolts.

| Year | Total Unpaid Rent |
|---|---|
| December 2010 | $1,200 |
| 2011 | $400 |
| 2012 | $2,200 |
| 2013 | $4,100 |
| 2014 | - |
| September 2015 | -$1,700 |

Additionally, if Mr. McClain missed a month, he would routinely make a double payment to cure the missed payment. This occurred when the defendants missed a payment in March 2015 but made two payments in July 2015.

Based upon these findings, the court concluded that "plaintiff established damages for unpaid back rents and late fees between the time period 2010 and 2013 in the amount of $7,900, and unpaid rent for September 2015 in the amount of $1,700 and a late fee of $170." The court then held that "plaintiff is entitled to retain the last month's security deposit amount of $1,700 to compensate him for the defendants' occupancy of the property during the month of October 2015."

Whether a party has breached a contract is a question of fact, *Forrest Const. Co., LLC v. Laughlin*, 337 S.W.3d 211, 225 (Tenn. Ct. App. 2009), and the calculation of damages is also a factual determination, *Tennison Bros.*, 2017 WL 6403888, at *16 ("the actual calculation of damages is a question of fact"). We accord the trial court's pertinent findings and damage calculations a conclusive presumption of correctness in light of the lack of a transcript. Mr. Hearn has not cited to any evidence in the record which preponderates against the court's findings; the judgment is supported by the record.

III.   CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court.

_____
RICHARD H. DINKINS, JUDGE